May it please the Court, Counsel. My name is Jason Holden, and I represent the Defendant Appellant in this matter, John Doe. The heart of this case involves a promise, a promise not to prosecute John Doe in return for statements he gave. That promise was good on April 12th, and the District Court so found. What happened on April 12th was criminal investigator Terry Boyd promised John Doe that if he gave statements in response to questions regarding the stabbing of the victim in this matter, and because the victim is juvenile, I'm just going to refer to, I'm not going to say the victim's name, that he would not be prosecuted for those statements, and the District Court found that as a fact. C.I. Boyd's promise was good two days later on April 14th, when he again interrogated John Doe for a second time. What's important about that second interrogation is before he began, he reminded John Doe of their conversation from April 12th. The promise made on April 12th was good on April 14th, and also good on May 9th. On May 9th, C.I. Boyd again interrogated John Doe, this time for a third time, and prior to questioning, reminded him of the conversations from April 12th and April 14th. John Doe was charged in this case with aiding and abetting under 18 U.S.C. Section 2. That crime requires the formation of specific intent. The specific intent here is specific in the sense that it must show that he wanted to bring about the assault with a dangerous weapon. That's why the statement obtained from John Doe on May 9th is critical in this case. In Oregon v. Elstad, the United States Supreme Court clearly recognized that if an unwarranted statement was involuntary, then the warranted statement may be suppressed as tainted fruit. The facts of this case are expressed in that on April 12th, there was no Miranda given. On April 14th, there was no Miranda given. The fact that Miranda was given on May 9th in no way affects the admissibility of this. Is this a question of law that you are arguing? It is, Your Honor. That if you interview someone who's not under arrest, and you don't Mirandize him, and he goes home, and then you, what is the proposition of law? Once you talk to somebody and you don't Mirandize him, then anything he says is, I don't quite understand. The proposition of law that I'm arguing, Your Honor, is that the involuntary statement from April 12th tainted the statement from May 9th. All right, but the analysis of taint has to include consideration of attenuation or dissipation, right? It does, Your Honor. And in this case, the promise did not dissipate. The initial promise was made on April 12th. How could it not dissipate if he's given a Miranda warning and asked to time a statement telling him anything he says can be used against him? Because on May 9th, prior to the questioning began, prior to the questioning, Terry Boyd expressly referred to the April 12th and April 14th statements. But that could be simply polite conversation. Mr. Doe, you remember, we've talked before. We're going to talk again. It was not polite conversation in this case. You're dealing with a juvenile with a sixth-grade education who has spoken with Terry Boyd on two previous occasions. The very, the initial conversation included a promise, as the district court found, that he would not be prosecuted. That second conversation. Is it good for forever, or can the police change his, can the police change their mind? The police can change their mind, but they have to tell the defendant that they've changed their mind. Is that the Miranda warning? Absolutely not in this case. I don't understand. It seems to me you're undercutting Miranda, because if you, if you, if what you say is correct, then they didn't have to give him a Miranda warning when they brought him in, because, you know, they could, they could, they had already violated his Miranda rights. And it just doesn't seem to make sense. Well, the difficulty here is that even though they gave him a Miranda, the question is, did that warning effectuate the promise? And it clearly didn't here. You have the same interrogator, the same location of the interrogation. All of those circumstances are important. Although, although dissipation is one factor, the other factors that weigh more heavily here are the consistency of the interrogator and the consistency of the promise. Did, did Mr. Doe have a guardian with him? He did. He had his grandmother with him. Was she aware that he was being given a Miranda warning? He actually had to sign the paper, right? He signed the paper, yes. And did she see the paper? She was aware that he was given a Miranda warning, Your Honor. That is. What, what more did the police need to do here in order to be able to question Mr. Doe? What the police needed to do, what Terry Boyd needed to do was say, John Doe, we've talked before, but the rules have changed. I'm going to prosecute you based on this statement. And that was not done here. The fact that you give. What's your authority for that, that you have to go beyond Miranda and tell him, okay, now I talked to you six months ago and I didn't give you a Miranda warning because you weren't under arrest, but now you are and I'm giving it to you. The authority here is Oregon v. Elstad and Missouri v. Strieberg, because the very first statement was involuntary. When a, when a criminal investigator promises to not prosecute, that undermines the rational intellect and free will of a suspect. That involved a statement, help me, was, did that involve the admissibility of the statement after Miranda warnings had been given? Oregon v. Elstad? Yes. Yes. Oregon v. Elstad deals with an initial statement that wasn't voluntary, that was voluntary. Then Miranda was given and the admissibility of that statement came in because the initial statement was voluntary. This is a completely different factual circumstance. And that's what Missouri v. Strieberg is about. And, and that's why this case. I thought we were talking about a statement that was made after he was Mirandized. In this case? Yeah. We are, Your Honor. We are. But what's important is you cannot separate the statement that he gave after his, after he was Mirandized from the April 12th statement. Because there was a promise made on April 12th. That promise makes that statement involuntary. You cannot separate that statement from the April 14th statement. Your problem, counsel, is you're not criticizing the police for using the content of the April 12th and April 14th discussions, right? The police aren't using those statements. They're using statements that were acquired in May after they gave the Miranda warnings. Absolutely, Your Honor. Which is what they have to do in order to get around Miranda. They didn't give Miranda on April 12th. They didn't give Miranda on April 14th. And in order to get around Miranda, they give Miranda on May 9th. No, they don't. They don't get around it. They're complying with it. They're complying with it. That's why I don't understand. They're not complying with it here. The reason why is because they promised him on April 12th that he wasn't going to be prosecuted. They'd be in the same boat if they didn't give him any Miranda warning at all. Is that what you want to tell the police? Once you've interviewed somebody and you don't give him a Miranda warning, then you never, then you can't ever get any statements, so you might as well. They can give him Miranda. Never give him Miranda? And I'm not telling the police to do anything. Under the facts of this case, the promise should have been revoked. Under Oregon v. LSTAT, if the very first statement is involuntary and the subsequent statements flow from that statement, the warned statement is inadmissible. And the reason why is because you can't separate John Doe's rational intellect in giving the initial statement from the post-warning statement. And that's what Missouri v. Siebert is about as well. I cite that in my 28J letter, Your Honor. In that case, the court recognized that improper tactics can be a factor to be used under Miranda. In this case, on May 9th, the criminal investigator used improper tactics. He tricked John Doe into giving a statement by providing him false information. That is one fact that the court can consider in determining whether or not the May 9th statement should become admissible. I'd like to turn briefly to Issue 2. It's a sufficiency of the evidence argument, Your Honor. There was not proof beyond a reasonable doubt here. The district court should have returned a not true verdict to the charge of juvenile delinquency because the sole statement in this case was obtained by improper tactics. By telling John Doe that the victim in this case said something that he had not, and in response to that trickery, John Doe gave the statement that the district court used to convict, and I would like to reserve the rest of my time for rebuttal. Thank you. Thank you. You have a little over a minute. May it please the Court. Thank you, Your Honor. I'm Josh Van De Wettering again for the District of Montana United States Attorney's Office. I believe this is a question of the facts, and I would like to highlight a few of those facts because I don't think it's correct to assert that there was a promise made not to prosecute. In fact, the promise was that he was not to be arrested, and that was certainly what he Page 66, excerpts of record, page 102, where Doe is asked by his counsel, excuse me, it begins on page 101, did he say to you, you weren't going to be arrested? Doe acknowledges that I wasn't going to be arrested. Yeah. Question, what did you take that to mean, Mr. Doe? Answer, that I wasn't going to jail. His answer is not that I wasn't going to be prosecuted. His answer is that I wasn't going to jail. Then a leading question, do you think that he meant you weren't going to be charged? Answer, yes. I don't think that record really reflects that Doe's understanding is that he isn't going to be prosecuted. Of course, I agree that the Miranda warning on the statement that was actually used would vitiate that, even if it were a promise, but I don't think it really is that promise in the first place. Similarly, the suggestion that it's a lie to say that the other juvenile had implicated him seems incorrect, or excuse me, incorrect. The United States has appended that other juvenile's handwritten statement to the back of our brief, where the juvenile says, and the question is, did that juvenile say we planned to get him, as Officer Boyd testified to, and that juvenile writes in his statement, we both decided to go and get him. How is it an untruth to tell Mr. Doe that the juvenile said, I don't even remember the exact words Agent Boyd used at this time, but the thrust of it is, yes, this guy has implicated you in the planning of this action. That's completely true. It's not a deception at all. That leaves aside the question of whether it's improper to use a deception. I think this Court has clearly held that it's permissible to use a deception. Not that I necessarily feel that way myself, but I don't think one was used here anyway. Moreover, the question is whether or not the defendant's will was overborne, his free will was overborne by the government. I don't think there's any evidence of that, and the Conley case, which we cite, is a good example, I think. They're a person who, arguably, didn't have much of a free will in the first place because of his mental health issues, confesses to a policeman in Denver, and the Supreme Court holds that there's no state action that overbore his will, and so there can be no suppression. That seems to be similar to what the defendant seems to be saying here, that he's such a that he's so fragile that even the slightest promise could tip him over the edge, and I don't think there's any evidence to suggest that he is that fragile. You know. He's 17 years old, though. He's practically an adult. He's got his guardian with him. We're focusing on this promise of not prosecution that's not even really a promise at all, that he seems to understand, that he understands quite correctly, is a promise that I'm not going to jail. He's not this fragile person whose will is teetering over the edge. The government hasn't done anything to push him over the edge, if you were, and certainly hasn't lied to him in any respect, so. And the evidence, I think, is overwhelming that he participated in this crime. Counsel, would you turn to the question of the sufficiency of the evidence and tell me, what is the propriety of the police telling Doe that his friend told them X when the friend did say X, he also said Y and Z, and then came back and disavowed X? You know. Is that an acceptable police tactic? I think it is an acceptable police tactic. I'll say first, I don't think that's exactly what happened here, because he goes around so many times and he finishes up with his written statement, and I think even the written statement includes the implication of X. But just as in a more general term, I think it's clearly held by this Court to be permissible to flat deceive somebody, to say, we know that your fingerprints are all over the gun, for instance, even when we don't know that. I'm not defending that kind of a tactic, but I don't think that is what, because I don't think that's what's happened here, but I think the law is that that is a permissible tactic. Now, maybe a juvenile is more susceptible to that sort of thing, if that sort of tactic were being used, but in general terms, I think it is permissible. It's back to a question of, is your will overborn, and I think the theory of permitting a lie is that if you have not committed this crime, your will will not be overborn by being presented a lie. You will still stick to what you believe the truth is, so. Thank you. Thank you. I'd like to address the factual issue. First of all, the district court found that there was a promise made on April 12th. In excerpts of record, page 115, the district court is cited as saying, it is certainly clear from the record that insofar as the April 12th statement is concerned, the defendant was told that he would not be prosecuted for statements on the basis of statements made at that interview. The district court legally erred, though, by holding that that promise was only good on April 12th and not good on April 14th and not good on May 9th. I would also like to address the statement with regard to the actual principle in this case. He did tell three different stories. The final written citation does not include the statement, let's go get this guy. We have to focus on what John Doe was charged with in this case, aiding and abetting an assault with a dangerous weapon, which is a specific intent crime. Without that statement, the district court could not find guilt beyond a reasonable doubt, as the district court recognizes that it is my determination that the defendant in fact knowingly and intentionally aided Mr. Scott in the commission of this assault. There is no other conclusion to be drawn from the set of events that would say that involved the declaration, let's go get the guy. That's an excerpt of record, page 197. And thank you. The matter just argued is submitted for decision. We'll hear the next case at Thorne v. Alaska Airlines.
judges: Schroeder, Tashima, Bybee